IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:07CR0004 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| RATKO MASLENJAK, | ) | |
| | ) | |
| Defendant. | ) | <u>GOVERNMENT'S TRIAL BRIEF</u> |

The United States of America, through its counsel, Gregory A. White, United States Attorney for the Northern District of Ohio, and Phillip J. Tripi, Assistant U.S. Attorneys, submits the following Trial Brief containing relevant facts, law, and motions in limine for the consideration of this Honorable Court.  Section I of the brief provides a factual summary of the case, section II provides an overview of the law regarding the offenses contained in the two-count indictment, and the remaining sections address other evidentiary issues likely to be raised during the trial and motions in limine.

2

TABLE OF CONTENTS

I      FACTUAL OVERVIEW . . . . . . . . . . . . . . . . . . 3

II     OVERVIEW OF TITLE 18, SECTION 1546, UNITED STATES CODE . 7

III    ADMISSIBILITY OF EVIDENCE OF OBSERVATIONS MADE BY
       AGENT GUASTINI DURING THE DEFENDANT'S INTERVIEW . . . . 13

IV     AUTHENTICATION OF DOCUMENTS . . . . . . . . . . . . . 14

V      MATERIALITY . . . . . . . . . . . . . . . . . . . . 19

VI     MOTION IN LIMINE REGARDING COLLATERAL CONSEQUENCES . . .21

VII    MOTION IN LIMINE ON SPECIFIC ACTS EVIDENCE INTRODUCED
       BY THE DEFENSE . . . . . . . . . . . . . . . . . . 24

VIII   MOTION IN LIMINE TO PRECLUDE REFERENCE TO CERTAIN
       INFORMATION RECEIVED FROM ADJUCICATION OFFICER  . . . . 28

IX     ADMISSIBILITY OF GOVERNMENT RECORDS . . . . . . . . . 33

X      CERTIFICATION OF IMMIGRATION RECORDS . . . . . . . . .35

XI     LIMITATIONS ON IMPEACHMENT THROUGH USE OF SUMMARIES OF
       ORAL STATEMENTS PREPARED BY GOVERNMENT AGENTS . . . . . 36

3

I    FACTUAL OVERVIEW

Ratko Maslenjak is a citizen of Bosnia-Herzegovina who entered into the United States as a Refugee through the Port of New York City, NY on September 28, 2000.  Maslenjak currently lives in Akron, Ohio.  Maslenjak is listed on military rolls as having belonged to the Army of the Republika Srpska (VRS), Military Post 7042, part of the Bratunac Brigade, from January 1995 to November 1995.  In July 1995, military units of the VRS Drina Corps, including the 5th Company, 1st Battalion Bratunac Brigade, were part of a campaign that resulted in the capture of the United Nations designated safe-area of Srebrenica, and the performance of executions of approximately 3,500-5,000 Bosnian Muslim men and boys.  In addition, in violation of international law, 25-35,000 Bosnian Muslim women, children, and elderly men were forcibly transferred from the environs of the safe-area to the demarcation line between Bosnia and Herzegovina by these military units.

The International Criminal Tribunal for the Former Yugoslavia (ICTY) was established in 1993 by the UN Security Council to investigate and punish senior officials responsible for the crimes occurring in the war between the Bosnian Muslims and the Bosnian Serbs.  ICTY performed its own investigation into the events surrounding the executions of the Bosnian Muslim men and boys that occurred in July 1995.  During their investigation,

4

ICTY has obtained official military documents listing individuals
who served in the VRS.  In addition to the name of the
individual, the VRS commonly used the first name of the soldier's
father to further identify the soldier in various military lists
and documents.  Maslenjak's name is specifically listed as
"Maslenjak Ranka Ratko" on these lists and documents, and Ranka
is Maslenjak's father's first name.

ICTY has provided various documents, documenting Maslenjak's
military involvement in the Army of the Republika Srpska during
the capture of the UN safe-area of Srebrenica and the subsequent
executions of Bosnian Muslim men and boys.  Included in these
documents are: 1) an order from the Drina Corps Command which
sought to give the participants of the Training Seminar for
Company Commanders, Bratunac 1st Infantry Brigade new uniforms,
and which included Maslenjak as one of the individuals to receive
a new uniform, 2) a list of Reserve Forces in which Maslenjak was
included, 3) a promotion letter from the Drina Corps Command
which stated the promotion of non-commissioned officers in times
of war, and which included Maslenjak was as being promoted to
Second Lieutenant, 4) a memorandum from the Army Headquarters of
the Republika Srpska stating that at the Commanders Staff
meeting, they decided not to promote Maslenjak to Second
Lieutenant, and 5) a list of non-commissioned officers in the
Reserve in the 1st Bratunac Battalion in which Maslenjak's name

5

was included.  All of these documents were dated between January
1995 and November 1995.

To apply and receive the status of a Refugee to enter the
United States, Maslenjak was required to fill out certain U.S.
Government documents.  One of the documents Maslenjak completed
was Form I-590, Registration for Classification as Refugee.
Maslenjak swore on the I-590 that the only military service he
participated in was compulsory time as a private assigned to
communications in the Yugoslavia Military from 1979 to 1980.
Maslenjak stated under penalty of perjury on the I-590 that he
was never a member of a political professional or social
organization, and failed to disclose his participation in the
VRS.

Under penalty of perjury, Maslenjak also signed Form I-485,
Application to Register Permanent Residence or Adjust Status.  On
this form, Maslenjak was required to list his "present and past
membership in or affiliation with every political organization,
association, fund, foundation, party, club, society, or similar
group in the United States or any other place since his 16th
birthday."  He was told to include any foreign military service.
In response, Maslenjak wrote only that he was in the Yugoslavian
Army from 1979 to 1980.  Maslenjak also answered that he had not
"by fraud or willful misrepresentation of a material fact, ever
sought to procure, or procured, a visa, other documentation,

6

entry into the U.S. or any immigration benefit." After his application was approved, Maslenjak presented himself to the Citizenship and Immigration Services in Cleveland, Ohio to get fingerprinted for his I-551, Permanent Resident Card. The fingerprint card of Maslenjak was accepted by Citizenship and Immigration Services.

Immigration and Customs Enforcement, and its predecessor, Immigration and Naturalization Service, consider the failure to list the participation in the Republika Srpska Army as a material omission of fact for both purposes of determining whether an applicant should be accorded refugee status and whether an applicant should be allowed to adjust his status to that of a lawful permanent resident alien. Maslenjak failed to list his service in the VRS Army when completing the refugee documentation.

After first denying his participation in the VRS, Maslenjak later admitted that he was a member of the VRS for two years when Special Agents Boris Baburich and Thomas Guastini interviewed him at his residence, in his native language. This admission occurred after he was shown the roster of soldiers assigned to the 5th Company, 1st Battalion of the Bratunac Brigade and other military documents.

Count 1 of the indictment charges Ratko Maslenjak with knowingly making under oath as permitted under penalty of

7

perjury, and knowingly subscribing as true, a false statement with respect to a material fact in a document required by the immigration laws and regulations.  The government will show that he failed to list his two years of service in the VRS as a non-commissioned officer on his I-485 Application to Register Permanent Residence or Adjust Status.

Count 2 of the indictment charges the defendant with knowingly obtaining and receiving an alien registration receipt card, knowing it to have been procured by means of a false claim and statement.  The government will show that he applied for lawful permanent residence and obtained and received an alien registration receipt card knowing he had fraudulently entered the United States as a refugee.  The government will show that he knowingly made under oath and subscribed as true a false statement with respect to a material fact on his I-590 Registration for Classification as Refugee, a document required by the immigration laws of the United States, when he omitted and failed to disclose his military service in the VRS.


II  OVERVIEW OF TITLE 18, SECTION 1546, UNITED STATES CODE .

Defendant was indicted for two counts of violating U.S.C. § 1546.  The first count in the indictment charged that Defendant:

    did knowingly make under oath and as permitted
    under penalty of perjury under Section 1746 of
    Title 28, United States Code, and did knowingly

8

> subscribe as true, any false statement with
> respect to a material fact in any application,
> affidavit, and other document required by the
> immigration laws and regulation prescribed
> thereunder, to wit: RATKO MASLENJAK on his I-485
> form (Application to Register Permanent Residence
> or Adjust Status) failed to list his two years
> service in the Army of the Republika Srpska as a
> non-commissioned officer in response to question C
> in Part 3 of that form requiring disclosure of any
> foreign military service; in violation of Title
> 18, Section 1546(a), United States Code.

In order to convict a defendant of violating 18 U.S.C. § 1546 for making a false statement in a document required by immigration law, the government must prove beyond a reasonable doubt that: (1) "the defendant made a false statement;" (2) the statement was made in "an application, affidavit, or other document required by the immigration laws or regulations;" (3) the statement was made under oath, "under penalty of perjury;"(4) the statement was made "with respect to a material fact;" and (5) "the defendant made the statement knowing that it was false." United States v. Kone, 307 F.3d 430, 434 (6th Cir. 2002).

The indictment's second count charged that Defendant:

> [D]id knowingly possess, obtain, accept and
> receive any alien registration receipt card,
> knowing it to have been procured by means of
> any false claim and statement, and to have
> been otherwise procured by fraud, to wit,
> RATKO MASLENJAK applied for lawful permanent
> residence and obtained and received an alien
> registration receipt card knowing he had
> fraudulently entered the United States as a
> refugee by knowingly making under oath and

9

> subscribing as true a false statement on
> January 30, 1998 and/or April 22, 1998, with
> respect to a material fact on Form I-590
> (Registration for Classification as Refugee),
> a document required by the immigration laws
> of the United States, by omitting and failing
> to disclose his military service in the Drina
> Corps, Bratunac Brigade, 5th Company, 1st
> Battalion, of the Army of the Republika
> Srpska, for approximately two years including
> between January, 1995 and November, 1995; all
> in violation of Title 18, Section 1546(a),
> United States Code.

In order to convict a defendant of violating 18 U.S.C. §
1546 by using, possessing, obtaining, accepting, or receiving a
fraudulently procured alien registration receipt card, the
government must prove beyond a reasonable doubt: (1) that the
defendant knowingly "uttered, used, or possessed a document;" (2)
that the document was an alien registration receipt card, or
other document "prescribed by statute or regulation for entry
into or as evidence of authorized stay or employment in the
United States"; and (3) that the defendant "knew the document was
forged [or] falsely made." United States v. Ryan-Webster, 353
F.3d 353, 359-60 (4th Cir. 2003).  The first element is also
satisfied if the defendant ". . . possesses, obtains, accepts, or
receives" the document.  18 U.S.C. § 1546.  The third element is
also satisfied if the defendant possessed an alien registration
receipt card knowing it to have been "procured by means of any
false claim or statement, or to have been otherwise procured by
fraud or unlawfully obtained." 18 U.S.C. § 1546.

10

It is not required that the false statement be in an
official form of the Bureau of Citizenship and Immigration
Services.  It is sufficient if the false statement was included
in any affidavit or other document required to be attached to an
application.  See United States v. Yermian, 468 U.S. 63, 68-70
(1984).

A statement is "material" if it is one that has a natural
tendency to influence agency action or is capable of influencing
agency action.  See Kone, 307 F.3d at 435; See also United States
v. Matsumaru, 244 F.3d 1092, 1101 (9th Cir. 2001) (holding that
in order to fulfill the materiality element of visa fraud, a
statement must be capable of affecting or influencing a
governmental decision).  Furthermore, "[a]lthough a false
statement must have the capacity to influence a decision, it does
not have to be actually influential in order to be material."
United States v. Dedhia, 134 F.3d 802, 809 citing United States
v. Frost, 125 F.3d 346, 387 (6th Cir. 1997).  The government does
not have to prove that the statement prompted any official action
by the government agency.  See Kone, 307 F.3d at 435; see also
Kassab v. Immigration and Naturalization Serv., 364 F.2d 806, 807
(6th Cir. 1966) (holding that it was not necessary to show that
the defendant would not have procured his visa if the true facts
had been known; rather, it is sufficient that had the information
been revealed, it would have led to further action and the

11

discovery of facts which would have justified the refusal of the visa).

The Sixth Circuit has specifically held that in enacting U.S.C. § 1546, Congress intended an application for a visa "to attest with honesty and truthfulness to the facts as known by (the applicant) on the date and at the time that the document was executed." United States v. Wiggan, 673 F.2d 145, 147 (6th Cir. 1982). The relevant inquiry is "whether [the defendant] lied under oath on his visa application about a material fact that existed on the date he filled out the application." Id. The court further held that "[s]trong policy reasons support this interpretation of section 1546. As this court stated in a case involving an analogous false statement statute, such a provision penalizes a person for failing to tell the truth, not for the status of being a convicted felon, or in this case, a deported alien. Id, see Cassity v. United States, 521 F.2d 1320 (6th Cir. 1975). "The Congressional policy promoted by section 1546 is full and honest disclosure about facts deemed relevant to immigration proceedings." Id. at 147.

Under the relevant inquiry according to the Wiggan court, Defendant violated § 1546 because he did in fact lie under oath on his visa application about a material fact. The false statement was material because membership in the VRS is a fact which has a natural tendency to influence government action; it

12

may not have actually influenced the agency, but it had the capacity to do so. Defendant stated under penalty of perjury on his I-485 form that his only military service included compulsory time as a private in the Yugoslavia Military from 1979 to 1980. He also received an alien registration receipt card knowing that it was fraudulently obtained due to his I-590 form containing the same omission concerning his service in the VRS. Knowing that revealing military service was necessary - as evidenced by his admission that he served in the Yugoslavia Army - Defendant knowingly omitted his membership in the Army of the Republika Srpska, Military Post 7042, Bratunac Brigade.

This omission constitutes a false statement with respect to a material fact, the statement was made in an application required by immigration law, and the defendant made the statement knowing that it was false. Defendant then received an alien registration card because of the same material false statement, made on both the I-590 application for refugee status and the I-485 application for adjustment of status to lawful permanent resident. Therefore, Defendant should be convicted of both counts of violating § 1546 not necessarily because he has served in a foreign military, but because he "fail[ed] to tell the truth." Wiggan, 673 F.2d at 147. "[T]o hold otherwise would be an open encouragement for an applicant to conceal facts [], on the off chance that false statements will not be exposed." Id.

13

III  ADMISSIBILITY OF EVIDENCE OF OBSERVATIONS MADE BY AGENT
    GUASTINI DURING THE DEFENDANT'S INTERVIEW

     Defendant Maslenjak has sought an order prohibiting the
United States from introducing any testimony by Agent Guastini
regarding statements made by Defendant to Agents Guastini and
Baburich when they interviewed Defendant at his house.  Agent
Guastini will not be called to testify regarding actual
statements made by Defendant in Serbo-Croatian because Agent
Guastini is not fluent in Serbo-Croatian.  However, Agent
Guastini's testimony and reports are still relevant with regards
to observations made by Agent Guastini during the interview with
Defendant, including Defendant's demeanor and the consensual
nature of the encounter.

     Relevant evidence is any evidence that tends "to make the
existence of a fact that is of consequence to the determination
of the action more or less probable than it would be without the
evidence."  Fed. R. Evid. 401.  Relevant evidence is generally
admissible.  Fed. R. Evid. 402.  Further, relevant evidence may
only be excluded if the prejudice to the defendant substantially
outweighs the probative value of the evidence.  Fed. R. Evid.
403.

     In this case, the government alleges Defendant violated 18
U.S.C. 1546(a) because he knowingly made misrepresentations about
his membership in the VRS on immigration forms and documents to
secure his entry into the United States.  Agent Guastini can

testify that Defendant's demeanor changed from cordial to concerned after Agent Baburich showed Defendant documents linking Defendant to the VRS.  This is evidence that Defendant's misrepresentations were knowing.  It may also be evidence that Defendant was in fact a member of the VRS.  Therefore, Agent Guastini's testimony is relevant.

In addition, the probative value of testimony regarding observations made by Agent Guastini is not outweighed by unfair prejudice to Defendant.  In determining whether there is unfair prejudice to the defendant, the court must consider whether the evidence encourages a decision on an improper basis.  United States v. Bonds, 12 F.3d 540, 567 (6th Cir. 1993).  Testimony about Defendant's demeanor and the consensual nature of the encounter would not encourage a decision on an improper basis.  Although Agent Guastini will not testify as to the actual statements made, his testimony regarding the circumstances surrounding the agents' encounter with Defendant and Defendant's reaction to being confronted with evidence of his participation in the VRS is certainly admissible relevant evidence, and that testimony is not subject to exclusion.


IV  AUTHENTICATION OF DOCUMENTS

Defendant Maslenjak has sought an order from this Court prohibiting the United States from introducing "testimony and

15

evidence regarding the Registration for Classification As Refugee
(Form I-590) and any other documents prepared in conjunction with
the refugee application, Application to Register Permanent
Resident, or other documents allegedly from the Republic of
Srpska, including military records, which have not properly been
authenticated pursuant to Rule 901 et seq. Of the Federal Rules
of Evidence." Def.'s Mot. in Limine at ¶ 2.  The United States
recognizes that the Federal Rules of Evidence, including
authentication, govern this case.

According to Fed. R. Evid. 901(a), "The requirement of
authentication or identification condition precedent to
admissibility is satisfied by evidence sufficient to support a
finding that the matter in question is what its proponent
claims." See Rush v. Ill. Cent. R.R. Co., 399 F.3d 705, 722 (6th
Cir. 2005); see also United States v. Atlas Lederer Co., 282 F.
Supp. 2d 687, 697 (D. Ohio 2001) (holding that authentication is
established "by evidence sufficient to support a finding that the
matter in question is what its proponent claims").

The court in United States v. Caldwell, 776 F.2d 989, 1001-
1002 (11th Cir. 1985) held that "[a]uthentication or
identification under rule 901 merely involves the process of
presenting sufficient evidence to make out a prima facie case
that the proffered evidence is what it purports to be.  Once that
prima facie showing has been made, the evidence should be

16

admitted, although it remains for the trier of fact to appraise whether the proffered evidence is in fact what it purports to be." See also United States v. Demjanjuk, No. 1:99CV1193, 2002 U.S. Dist. LEXIS 6999 at *54 (D. Ohio Feb. 21 2002) (holding that to establish that evidence is authentic, the Government need only present "evidence sufficient to support a finding that the matter in question is what the proponent claims"). The court held that the issue here "is not whether the evidence of genuineness induces a belief beyond a reasonable doubt that the document is the handiwork of its alleged drafter, but whether, if it is uncontradicted, a reasonable mind might--though not necessarily would--fairly conclude favorably to the fact of authorship." See Caldwell, 776 F.2d at 1001-1002.

Examples of authentication or identification conforming with the requirements of Rule 901 include: 1) "[t]estimony of witness with knowledge" (testimony that a matter is what it is claimed to be) (see United States v. Carriger, 592 F.2d 312, 315 (6th Cir. 1979); 4) "[d]istinctive characteristics and the like" (appearance contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances) (see United States v. Jones, 107 F.3d 1147, 1150 (6th Cir. 1997); and 7) "[p]ublic records or reports" (evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public

record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept) (see Haddix v. Dayton, 821 F.2d 649, 650 (6ᵗʰ Cir. 1987).  See Fed. R. Evid. 901(b).

The United States respectfully submits that the documents cited by Defendant Maslenjak (and any others offered by the United States at trial) will meet the specifications of these rules.  Ratko Maslenjak submitted an application, Immigration Form I-590: Registration for Classification as Refugee, to United States immigration officials which he signed on January 30, 1998, and swore to and signed again on April 22, 1998 before an immigration officer at the U.S. Embassy in Belgrade, Yugoslavia. Maslenjak also submitted a signed application, Immigration Form I-485: Registration for Permanent Residence or Adjust Status, on August 12, 2002, therefore fulfilling the first element of the visa fraud offense.  According to the documents that have been provided by ICTY, these application forms contain false statements about Maslenjak's military service in the Army of the Republika Srpska.

The immigration forms referenced above fall within the express terms of the public records provisions providing for self-authentication or authentication through a sponsoring witness from the agency holding these records.  In addition, the "[a]ppearance, contents, substance, internal patterns, or other

18

distinctive characteristics" of the documents received from ICTY, "taken in conjunction with circumstances" surrounding their provision to the United States, provide sufficient authentication.  See United States v. Jones, 107 F.3d 1147, 1150 (6th Cir. 1997).  According to the court in United States v. Elkins, 885 F.2d 775, 785 (11th Cir. 1989), the "[u]se of circumstantial evidence alone to authenticate a document does not constitute error."  The court held that if "[t]here is no evidence of adulteration or forgery . . . there is no reasonable probability of misidentification."  See id.

If the Court determines that the documents received from ICTY do not meet the specifications under Rule 901(b)'s public records or distinctive characteristics provisions, the United States respectfully contends that there is sufficient evidence to support the finding that "the matter in question is what [the] proponent claims."  Fed. R. Evid. 901(a).  Although the VRS no longer exists and there is therefore no government agency that can certify these documents as authentic, there is indicia of reliability that these documents are what they are purported to be.  Richard Butler, a witness in this case, is an Intelligence Analyst from ICE who can testify as to the authenticity of the documents gathered by and in the custody of ICTY due to his involvement in the retrieval of these documents from the VRS. Butler took part in the overall search operations.  Butler was

19

the intake custodial officer who organized and identified the documents seized by search teams.  As a result, the documents should be admitted.

V    MATERIALITY

Defendant Maslenjak has sought an order from this Court prohibiting the United States from introducing "any evidence related to the capture of the UN designated safe-area of Srebrenica in July 1995 by the military and police forces of the Republika Srpska, including the Army of the Republika Srpska (VRS)."  Def.'s Mot. in Limine at ¶ 3.  Defendant Maslenjak asserts that "[this] evidence is not relevant to any of the issues to be tried in the instant case."  Id.  As the United States explained in its response to this motion, "[t]he testimony and evidence regarding the capture of the UN designated safe-area of Srebrenica in July 1995 by the Republika Srpska is relevant because it is necessary to demonstrate the materiality of the Defendant's omission on his Form I-590."

A statement is "material" if it is one that has a natural tendency to influence agency action or is capable of influencing agency action.  See United States v. Kone, 307 F.3d 430, 435 (6th Cir. 2002); See also United States v. Matsumaru, 244 F.3d 1092, 1101 (9th Cir. 2001) (holding that in order to fulfill the materiality element of visa fraud, a statement must be capable of affecting or influencing a governmental decision).  While the

20

government must prove that the false statement was material, it is not required to prove that the statement actually influenced the government agency or prompted any official action. See Kone, 307 F.3d at 435; see also Kassab v. Immigration and Naturalization Serv., 364 F.2d 806, 807 (6th Cir. 1966) (holding that it was not necessary to show that the defendant would not have procured his visa if the true facts had been known; rather, it is sufficient that had the information been revealed, it would have led to further action and the discovery of facts which would have justified the refusal of the visa).

The United States asserts that the defendant's failure to disclose his membership in the VRS was a material omission. As the United States explained in its response to the defendant's Motion in Limine, the defendant's failure to disclose this information was a material omission since its disclosure would have led to a further inquiry by the State Department and to the probable rejection of his refugee application; and if rejected, then Defendant would not have been in a position to apply for lawful permanent resident status in the United States. See Kone, 307 F.3d at 435. In order to establish this, the United States intends to introduce evidence of the Bratunac Brigade's participation in the capture of the UN designated safe-area. Testimony regarding the capture of the UN designated safe-area will provide the background of the case and reveal the

21

materiality of the defendant's misrepresentations.

In addition, Todd Gardner will testify as an expert as to
the refugee process with regard to the admissions and omissions
on required government documents.  Gardner will explain the four
steps taken by Asylum Officers when deciding whether to accept,
deny, or further question refugee applicants.  Gardner will
identify what would be considered a material statement which if
not included on the required immigration documents, would be
viewed as a material omission.  Gardner will identify membership
in a brigade that was involved in genocide as a material fact
that would result in denial, and explain that the failure to
disclose this information on required immigration documents is a
material omission.  Therefore, the evidence regarding the capture
of the safe-area should be admitted.


VI   MOTION IN LIMINE REGARDING COLLATERAL CONSEQUENCES

The United States asserts that any reference by the
defendant to the future consequences of a guilty verdict,
including but not limited to imprisonment or deportation, be
forbidden.  The potential consequences of a guilty verdict are
entirely collateral to this case.  Any such references would be
utterly irrelevant to the question of the defendant's guilt and
infringe upon the role of the jury as fact finder.  The sole
purpose of such references would be to appeal to the emotions of

22

the jury; such inflammatory rhetoric is impermissible under well-established precedent.

As an initial matter, any reference to the future consequences of a guilty verdict are inadmissible under the Federal Rules of Evidence.  Relevant evidence must be "of consequence to the determination of an action."  <u>See</u> Fed. R. Evid. 401.  If evidence offered is not of consequence to the determination of an action, it is inadmissible.  <u>See</u> Fed. R. Evid. 402.  Any information offered by the defendant regarding the future consequences of a guilty verdict would have no bearing on the ultimate issue to be determined by this action: the defendant's guilt or innocence.  Furthermore, such information would also be unfairly prejudicial under Fed. R. Evid. 403.  It would have no probative value whatsoever and directly appeal to the jury's emotions and sympathy.  The Sixth Circuit Court of Appeals has ruled that Rule 403 protects against precisely this sort of "decision on improper basis."  <u>See</u> <u>United States v. Mendez-Ortiz</u>, 810 F.2d 76, 79 (6th Cir. 1986) (holding that Rule 403 is only applicable when evidence offered has no probative force).

Evidence regarding the future consequences of a guilty verdict is improper not only as an evidentiary matter, but also impinges upon the traditional function of the jury.  In <u>Shannon v. United States</u>, the Supreme Court ruled that the jury's

23

function is to find the facts and to decide whether the defendant is guilty of the crime charged.  See 512 U.S. 573 (1994).  In that case, the defendant requested a jury instruction stating that the defendant would be involuntarily committed if found not guilty by reason of insanity.  The trial court declined to include such an instruction and the Supreme Court affirmed.  The Court described providing the jury with information as to the consequences of a verdict as "irrelevant to the jury's task."  See Id. at 579.  Providing the jury with this type of collateral information "invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion."  See Id.

The Sixth Circuit has been equally vigilant in protecting against the contaminative effect of such references.  In United States v. Chesney, 86 F.3d 564 (6th Cir. 1996), the defendant argued that his Fifth Amendment right to a fair trial had been violated when the trial court refused to allow him to refer to the punishment he would receive if convicted.  The court rejected defendant's argument, holding that "argument about possible punishment in Chesney's case is foreclosed by well-settled precedent."  See Id. at 574.  Similarly, in United States v. Bilderbeck, 163 F.3d 971 (6th Cir. 1999), the trial court had granted the government's motion in limine to prohibit the

24

defendant from inquiring on cross-examination as to the potential
penalties faced by the defendant.  The Sixth Circuit upheld the
trial court's determination, citing the Sixth Circuit Pattern
Jury instructions stating "[i]t would violate your oaths as
jurors to even consider the possible punishment in deciding your
verdict."  Id. at 978 (citing Pattern Jury Instructions of the
Sixth Circuit, No. 8.05(2) (1991)).

In sum, the admission at trial of any testimony, argument,
or reference by the defendant as to the future consequences of a
guilty verdict would be not only irrelevant but potentially
inflammatory and confusing.  For these reasons, both the Supreme
Court and the Sixth Circuit have ruled conclusively that such
collateral information not reach the jury's ears.  This court
should grant the United States' Motion in Limine and prohibit the
defendant from making any reference to the future consequences of
a guilty verdict, including but not limited to imprisonment and
deportation.


VII  MOTION IN LIMINE ON SPECIFIC ACTS EVIDENCE INTRODUCED BY THE
     DEFENSE

It is anticipated that the defense may present character
evidence into trial under Fed. R. Evid. 404(a)(1).  This rule
permits the admission of evidence of a "pertinent trait" of the
accused.

While character evidence is admissible under Section

25

404(a)(1), it is admissible only for pertinent traits.  So any evidence admitted must relate to a trait pertinent to the alleged crime.  The Court should not permit witnesses to testify about non-pertinent traits of the defendant's character.  The testimony is relevant only if it assists the jury in their deliberations of guilt or innocence.  "The word pertinent is read as synonymous with 'relevant'. ...Thus, the basic issue is whether the character trait in question would make any fact 'of consequence to the determination' of the case more or less probably than it would be without evidence of the trait."  See United States v. Angelini, 678 F.2d 380, 381 (1st Cir. 1982), citing United States v. Staggs, 553 F.2d 1073, 1075 (7th Cir. 1977), 22 Wright & Graham, Federal Practice and Procedure: Evidence §5236, at 383 (1978), and Fed.R.Evid. 401.

The Court should limit any defense character witness testifying to those traits pertinent to the charged crime.  The Court should not permit the witness to testify about the general character of the accused.

The Federal Rules allow three types of testimony in regard to character evidence: reputation, opinion, and specific acts.  A defense witness may only testify either on reputation or opinion of the accused on direct examination.  "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by

testimony in the form of an opinion."  See Fed. R. Evid. 405(a).
The Rule enacts the old common law rule for character evidence.
"The Federal and Revised Uniform Evidence Rules reinstate the
earlier common law approach."  See 1 McCormick Evidence §191 (4th
ed. 1992).  "Like the common law rules, it does not allow
evidence of particular incidents."  See Id.

The advisory note rejects the admission of specific acts.
"When character is used circumstantially and hence occupies a
lesser status in the case, proof may be only by reputation and
opinion."  See Fed.R.Evid. 405 Advisory Note.  Unless the trait
in question is an element of the charge, claim, or defense,
specific acts may not be introduced.  "[T]estimony of specific
instances is not generally permissible on direct examination of
an ordinary opinion witness to character."

In United States v. Benedetto, 571 F.2d 1246 (2nd Cir.
1978), the government charged a meat inspector with taking money
in connection with his official duties.  The defendant sought to
introduce the managers of other meat processing plants who would
testify that he had neither asked for, nor received any money
from them.  The Court of Appeals held that the exclusion of such
evidence was proper.  "[C]haracter evidence has long been
admissible only in the form of reputation and not in the form of
a recitation of good or bad acts."  See Id. at 1249-1250.  The
court noted that the new Federal Rules permitted opinion evidence

but also noted that the exclusion of prior specific acts was continued.

In <u>Virgin Islands v. Peterson</u>, 553 F.2d 324 (3rd Cir. 1977), the district court convicted the defendant of two counts of second degree murder.  The defendant had sought to introduce evidence of his religious beliefs to show his peaceable nature. The district court refused to admit it.  The Third Circuit Court of Appeals affirmed the ruling.  The Third Circuit did agree that the defendant could introduce character evidence, but only in a limited form.  "The form of this testimony has been strictly limited, however, to the witness' response to the question, after foundation, of what is the accused's reputation." <u>See Id</u>. at 328 citing Weinstein & M. Berger, <u>Evidence</u>, §405(02) at 405-20 to 21 (1976).

There is only one recognized limited exception to this general rule, which is inapplicable to the present matter.  In <u>United States v. Hill</u>, 655 F.2d 512 (3rd Cir. 1981) the court held that specific acts could be admitted in an entrapment defense by an expert witness.

The defense is limited to reputation or opinion testimony concerning its witnesses on direct; however, the prosecution may use specific examples of defendant's conduct to question the witnesses credibility during cross-examination.  "On cross-examination, inquiry is allowable into relevant specific

28

instances of conduct."  See Fed.R.Evid. 405(a).  A good example
of the wide latitude that a prosecutor has to cross examine
character witnesses using prior specific actions is Michelson v.
United States, 335 U.S. 469 (1948).  While tried under the old
common law doctrine and not the Federal Rules of Evidence, the
rule was largely meant to codify the common law rule, see
McCormick infra.  The Supreme Court found nothing improper in the
prosecution asking if a witness had heard of an arrest made over
twenty years ago of the defendant for a crime different than the
one charged.

    For the forgoing reasons the United States would like to
exclude all character witness testimony not pertinent to the
offense charged and statements or evidence of specific acts of
the defendant.


VIII MOTION IN LIMINE TO PRECLUDE REFERENCE TO CERTAIN
     INFORMATION RECEIVED FROM ADJUDICATION OFFICER

    The United States requests that this Court preclude
testimony regarding information received from Adjudications
Officer Cathy Pollnow, because that testimony or any such
references thereto would be utterly irrelevant to the question of
Defendant's guilt or the materiality of the Defendant's omission
on his I-485, and as such, would infringe upon the role of the
jury as a fact finder. See Fed. R. Evid. 402. In fact, the sole

purpose of such reference would be to confuse the jury and such
rhetoric is impermissible.  <u>See</u> Fed. R. Evid. 403.


**A.    Relevant Facts**

Under penalty of perjury, the Defendant signed Form I-485,
Application to Register Permanent Residence or Adjust Status.  On
this Form I-485, the Defendant was required to list his present
and past membership in or affiliation with, among other things,
his foreign military service.  In response, the Defendant wrote
only that he was in the Yugoslavian Army from 1979 to 1980, when
in fact the Defendant was a member of the Army of the Republic of
Srpska.  This Form I-485 was adjudicated by Cathy Pollnow of
Citizenship and Immigration Services [hereinafter CIS].  The
United States, through Special Agent Thomas Guastini, has become
aware of an oral statement which arguably could be construed as
exculpatory, made by the adjudication officer who adjudicated the
I-485 application, Cathy Pollnow, to the effect that she believes
she would have approved the Defendant's application regardless of
whether he listed that he was a member of the Army of the
Republic of Srpska, because she 1) at the time of the
adjudication, she does not recall an alert being issued to
question such membership, 2) she relies on that type of issue
having been addressed and resolved during the interview regarding
the I-590 application for refugee status, and 3) due to the large

30

volume of her individual workload.

**B.    Law**

"'Relevant evidence' means evidence having any tendency to
make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than
it would be without the evidence." Fed. R. Evid. 401. In
addition, a statement or omission is material if it is one that
has a natural tendency to influence agency action or is capable
of influencing agency action.  See United States v. Kone, 307
F.3d 430, 435 (6th Cir. 2002).  Further, while the United States
must prove that the omission was material, it is not required to
prove that the statement actually influenced the United States
agency or prompted any official action. Id.

Immigration and Customs Enforcement [hereinafter ICE] and
CIS, and their predecessor agency, the Immigration and
Naturalization Service, consider the failure to list the
participation in the Army of the Republic of Srpska as a material
omission of fact for both purposes of determining whether an
applicant should be accorded refugee status and whether an
applicant should be allowed to adjust his status to that of
lawful permanent resident (which the Form I-485 is used for).
Defendant, when interviewed by Special Agents Boris Baburich and
Thomas Guastini, admitted that he was a member of the Army of the
Republic of Srpska for two years.  Defendant, however, failed to

list his service in the Army of the Republic of Srpska when he
filled out his I-485 under penalty of perjury.  Accordingly, the
Defendant's omission of his military service with the Army of the
Republic of Srpska is a material omission as defined by ICE.
Moreover, it is a material omission regardless of Cathy Pollnow's
statement that she would have still approved the application even
if the Defendant listed that he was a member of the Army of the
Republic of Srpska.  Simply because a particular CIS adjudicator
was not actually influenced by an omission does not render that
omission immaterial.

Furthermore, Cathy Pollnow's statement to the effect that
she would have approved the application is irrelevant and would
only confuse the jury because the United States is not required
to prove that the omission actually influenced the United States
agency or prompted any official action.  Kone, 307 F.3d at 435. As
such, the only relevant evidence or issue is what the standards
or the protocol is for properly filling out and adjudicating the
I-485 form.  Accordingly, Cathy Pollnow's statement regarding her
likely adjudication of the Defendant's Form I-485 is not evidence
having any tendency to make the existence of the Defendant's
material omission less probable than it would be without the
statement.  It is CIS's procedures and regulations that are
imperative to the issue of whether the Defendant's omission of
his service in the Army of the Republic of Srpska was a material

omission on his Form I-485, and CIS and ICE consider the failure to list one's service in the Army of the Republic of Srpska a material omission.

Therefore, the only reason for the Defendant to ask Cathy Pollnow whether she would have approved the application, or to allude to such statements, would be to confuse the jury and attempt to mask the material omission by the Defendant.  As such, the statements or testimony of Cathy Pollnow concerning whether she would have approved the Defendant's Form I-485 are irrelevant to the Defendant's guilt, the materiality of his omission, or any of the issues to be tried in the instant case.

Accordingly, this Court should grant the United States' Motion in Limine and prohibit the Defendant from making any reference to Cathy Pollnow's statement made to Special Agent Thomas Guastini regarding the adjudication of the claim and whether she would have approved the Defendant's claim even if he listed that he was a member of the Army of the Republic of Srpska, because the admission of her statements are contrary to the Federal Rules of Evidence 402 and 403.

33

IX   ADMISSIBILITY OF GOVERNMENT RECORDS

Government records will be introduced relating to several counts of the superseding indictment against the defendants. These records are admissible pursuant to Fed. R. Evid. 803(8); which provides in pertinent as follows:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, . . . unless the sources of information or other circumstances indicate lack of trustworthiness.

Business records have been found to be non-testimonial evidence and are therefore not subject to the Confrontation Clause of the Sixth Amendment. Crawford v. Washington, 541 U.S. 36, 56 (2004); see also, United States v. Jamieson, 427 F.3d 394, 411 (6th Cir. 2005) (finding business records are not "formal statements" or "solemn declarations").  The Sixth Circuit, while before Crawford, has allowed an Alien Registration file into evidence under Fed. R. 803(8).  United States v. Hodulik, 44 Fed.App. 656, 661-62 (6th Cir. 2002) (unpublished).  Post-Crawford, the Fifth Circuit, has likened immigration files to business records saying, "the [immigration] file contained statements that by their nature were not testimonial." United States v. Rueda-Rivera, 396 F.3d 678, 680 (5th Cir. 2005) (citing

34

United States v. Gutierrez-Gonzales, 111 Fed.Appx. 732, 734 (5th

Cir. 2004) (unpublished)).  The Ninth Circuit explained that a

government record, "not made in anticipation of litigation . . .

is simply a routine, objective, cataloging of an unambiguous

factual matter" and therefore is non-testimonial.  United States

v. Bahena-Cardenas, 411 F.3d 1067, 1075 (9th Cir. 2005).

Public documents are self authenticating pursuant to Federal

Rule of  Evidence 901 in the following situations:

> (1) [a] document bearing a seal purporting to
> be that of the United States, or of any
> State, district, Commonwealth, territory, . .
> . or of a political subdivision, officer, or
> agency thereof, and a signature purporting to
> be an attestation or execution.

> (2) [a] document purporting to bear the
> signature in the official capacity of an
> officer or employee of any entity included
> in paragraph (1) hereof, having no seal, if
> a public officer having a seal and having
> official duties in the district or political
> subdivision of the officer or employee
> certifies under seal that the signer has the
> official capacity and that the signature is
> genuine.

> * * *

> (4) [a] copy of an official record or report
> or entry therein, or of a document
> authorized by law to be recorded or filed an
> actually recorded or filed in a public
> office, including data compilations in any
> form, certified as correct by the custodian
> or other person authorized to make the
> certification, by certificate complying with
> paragraph (1), (2), or (3) of this rule or
> complying with any Act of Congress or rule
> prescribed by the Supreme Court pursuant to
> statutory authority.

35

Fed. R. Evid. 901.  Therefore, separate extrinsic evidence is unnecessary.


X    CERTIFICATION OF IMMIGRATION RECORDS

Title 8, Code of Federal Regulations, Part 103.7 provides as follows:

> (d) Authority to certify records.  Whenever authorized under 5 U.S.C. 552 or any other law to furnish information from records to persons entitled thereto, the following officials, or their designees authorized in writing as specified below, have authority to make certification, as follows:
>
> (1) The Associate Commissioner, Information Systems, the Assistant Commissioner, Records Systems Division, the Director, Records Management Branch, or their designee, authorized in writing to make certification in their absence-copies of files, documents, and records in the custody of the Central Office.
>
> (2) A regional commissioner, or district director, or the designee of either, authorized in writing to make certification in his absence-copies of files, documents, and records in the custody of his office.
>
> (3) The Immigration and Customs Enforcement Program Coordinator, formerly the Immigration and Naturalization Service, El Paso Intelligence Center, or the designee, authorized in writing to make certification in event of the Program Coordinator's absence-copies of files, documents, and records of the Immigration and Customs Enforcement in the custody of that office.

36

      (4) The Assistant Commissioner, Records
Systems Division, the Director, Records
Management Branch, or the Chief, Records
Operations Section, Central Office, or their
designee, authorized in writing to make
certification in their absence-the non-
existence of an official Service records.

8 C.F.R. § 103.7(d).

      The United States anticipates that the District Director of
the Bureau of Citizenship and Immigration Services, Mark B.
Hansen, or the Acting Director if he is unavailable, will testify
as the official custodian of records for the Bureau of
Citizenship and Immigration Services.  In the event that Hansen
will be physically unavailable to certify the authenticity of the
alien file, his designee, Assistant Regional Director Kim Adams,
will act as the official custodian of records.  Immigration
Regulations, 8 C.F.R. § 103.7(d) states, in part:

      [T]he following officials, or their designees
authorized in writing as specified below, have
authority to make certification, as follows...(2)
A regional commissioner, or district director, or
the designee of either, authorized in writing to
make certification in his absence-copies of files,
documents, and records in the custody of his
office.

8 C.F.R. § 103.7(d)(2)(2005); <u>Accord</u> <u>U.S. v. Cervantes-Flores</u>,
421 F.3d 825 (9th Cir. 2005); <u>Bustos-Torres v. I.N.S.</u>, 898 F.2d
1053 (5th Cir. 1990).


XI   LIMITATIONS ON IMPEACHMENT THROUGH USE OF SUMMARIES OF ORAL
     STATEMENTS PREPARED BY GOVERNMENT AGENTS

      The United States will call witnesses to testify who have

37

spoken with government agents.  The agents may have interviewed these witnesses and may have subsequently written memoranda of these interviews, summarizing the testimony.  The United States requests the court to limit the scope of cross-examination to preclude impeachment of the witnesses by means of any memoranda that the witness has neither seen nor adopted.


A.   Jencks Issue

Congress responded to the Supreme Court ruling on Jencks v. United States, 353 U.S. 657 (1957), by creating the Jencks Act (18 U.S.C. § 3500).  In general, this act states that after direct examination of a government witness, the government must provide the defendant any of the witness' prior statements in the government's possession that relates to the subject matter. United States v. Lloyd, 743 F.2d 1555, 1565 (11th Cir. 1984) (citing 18 U.S.C. § 3500 (1976)).  According to the Jencks Act:

> (e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means
>
> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

38

18 U.S.C. § 3500(e)(1970).  This act was not designed to permit defendants to conduct open explorations into government files. United States v. Nickell, 552 F.2d 684, 688 (6th Cir. 1977). Statements meeting one of these requirements are required to be turned over to the defendant.  As a courtesy to the Defendant and to present counsel with fair topics to explore, this office routinely makes available to counsel reports of oral interviews. Memoranda of Interviews are not statements of the interviewed witnesses because they are neither adopted by the witness nor are they "substantially verbatim recitals" that were "recorded contemporaneously."  18 U.S.C. § 3500(e).

It is unfair for a government witness to be cross examined regarding alleged statements made to a government agent based solely on that agent's memorandum of that interview.  The Supreme Court has noted that, "One of the most important motive forces behind the enactment of this legislation [the Jencks Act] was the fear that am expansive reading of Jencks would compel the undiscriminating productions of agent's summaries of interviews regardless of their character or completeness." Palermo v. United States, 360 U.S. 343, 350 (1959).  Furthermore, it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." Id.  The Court goes on to say that:

39

> [W]e think it consistent with the legislative
> history, and with the generally restrictive terms
> of the statutory provision, to require that
> summaries of an oral statement which evidence
> substantial selection of material, or which were
> prepared after the interview without the aid of
> complete notes, and hence rest on the memory of
> the agent are not to be produced.  Neither, of
> course, are statements which contain the agent's
> interpretations or impressions.

Id. at 352-53.  The agent's memorandum is only producible if it is, "a substantially verbatim recital of an oral statement that the witness has made to him not the agent's own comments or a recording of his own ideas..." United States v. Judon, 581 F.2d 553, 555 (5ᵗʰ Cir. 1978) (citing Palermo v. United States, supra, 360 U.S. at 358-60 79 S.Ct. A 1228 (floor conversation between Senator Javits and Senator O'Mahoney, sponsor of the original Senate bill and one of Senate Conferees)).

If an agent's memorandum is going to be considered a prior statement, a foundation is necessary.  Nickell, 552 F.2d at 689. According to 18 U.S.C. § 3500, if the witness affirms that the summary is his/her statement then it is producible.  The Sixth Circuit has noted that FBI files and reports are not allowed to be produced unless the witness approves the statements.  Nickell, 552 F.2d at 689 (citations omitted).  Interview notes are considered adopted by the witness if they, "were read back to and verified by the witness and if the report summarized the notes without material variation." United States v. Nathan, 816 F.2d 230, 236-237 (6ᵗʰ Cir. 1987) (citations omitted).  According to

40

the Eleventh Circuit, a verbal acknowledgment also satisfies this requirement.  Lloyd, 743 F.2d at 1566 (citation omitted).

The second way an agent's summary is a statement is if it is a "substantially verbatim" recording of the interview made contemporaneously.  18 U.S.C. § 3500.  The Fifth Circuit has noted that, "It is clear from the continuous congressional emphasis on 'substantially verbatim recital'...that the legislation was designed to eliminate the danger of distortion and misrepresentation in a report which merely selects portions, albeit accurately, from a lengthy oral recital."  United States v. Martinez, 87 F.3d 731, 735 (5th Cir. 1996) (quoting Palermo, 360 U.S. at 352).  Furthermore, the doctrine of *ejusdem generis* counsels against broad interpretations of "substantially verbatim" or "recorded contemporaneously" requirements.  Id. at 735.

The Sixth Circuit has said that an agent's memorandum is not verbatim if he/she uses his/her own interpretations, and does not allow witnesses to read or have read to them the statement. United States v. Williams, 962 F.2d 1218, 1224 (6th Cir. 1992). Even the occasional quote or phrase in notes does not suffice for this requirement.  Lloyd, 743 F.2d at 1567.  The Sixth Circuit has said that, "the only method to ensure the agent's notes accurately detailed the witness' statements is to follow the procedure detailed in [United States v. Chitwood [457 F.2d 675 (6th Cir. 1976] of having each witness read or verbally approve

41

the applicable statement when read to him." <u>Nathan</u>, 816 F.2d at 237 (see <u>Goldberg v. United States</u>, 425 U.S. 94, 110-11 n. 19, (1976)).  The reasoning for this requirement is that reliance on memory and incomplete notes, can reflect unintended inaccuracies which contain agent's impressions.  Judon, 581 F.2d at 555.


B.  Refreshing a Witness' Recollection

Assuming *arguendo*, that these memoranda are statements then they could only potentially be used to refresh a witness' memory if the proper foundation is laid.  The requirements for this foundation is as follows: (1) the witness' memory must be exhausted, (2) the time, place and person to whom the statement was given is identified and (3) the court is satisfied that the memorandum on its face is the witness' statement. <u>Rush v. Ill. Central R.R. Co.</u>, 399 F.3d 705, 716 (6th Cir. 2005).  Rule 612 of the Federal Rules of Evidence states that if it is permissible to use a writing to refresh a witness' recollection then, "the adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."  However, unsworn remarks of a government witness cannot be read into the record from an unverified document especially if it incriminates the defendant. <u>United States v. Shoupe</u>, 548 F.2d 636, 641 96th Cir. 1977). These memoranda cannot be used to refresh a witness' memory

42

because they are not the witness' statements and therefore the
foundation requirements cannot be met.

Even if the proper foundation is laid, government agents'
memoranda are still inadmissable because they are hearsay.  The
Ninth Circuit has ruled that an agent's testimony as to what a
witness said is hearsay and "not admissible in evidence to prove
the truth of the matter allegedly asserted in her prior
statement." United States v. Ragghianti, 560 F.2d 1376, 1380
(9th Cir. 1977).  Under Fed. R. Evid. 803(5) a recorded statement
can be admitted only if the witness adopted or made the statement
because it is the witness' refreshed memory, not the contents of
the statement that would be the substantive evidence.  Rush, 399
F.3d at 718 (citation omitted).  In order for the statement to be
admitted as substantive evidence, in accordance with
Congressional intent, the truthfulness and reliability of the
statement must be assessed.  United States v. Day, 789 F.2d 1217,
1223 (6th Cir. 1986).  Hence the requirement of Fed. R. Evid.
801(d)(1)(A) that the prior inconsistent statement must be made
under oath.  See also Day, 789 F.2d at 1217.

As the Sixth Circuit summarized in Shoupe, "we adhere to the
view of the 8th Circuit that, 'if a party can offer a previously
given statement to substitute for a witness' testimony under the
guise of 'refreshing recollect', the whole adversary system of
trial must be revised.'" 548 F.2d at 642 (quoting Goings v.
United States, 377 F.2d 753, 760 (8th Cir. 1967)).  If the

43

government agents' memoranda are considered statements they may only be used for impeachment purposes.  A party can only impeach a witness if his/her testimony is prejudicial or detrimental and needs to be neutralized.  <u>Goings</u>, 377 F.2d at 759.

As the Ninth Circuit has noted, "There is a crucial distinction between the use of a prior inconsistent statement of a witness only to impeach the credibility of the witness and its use to prove as a fact what is contained in the statement." <u>Ragghianti</u>, 560 F.2d at 1381.  Therefore, the jury needs a limiting instruction that the inconsistent statement should only bear on the credibility of the witness, not on the truth of the matter.  <u>Id.</u> at 1381.

The Sixth Circuit has also stated that a prior contradictory statement "weaken[s] the credibility of a witness, but it does not as a matter of law completely destroy that which was given on direct examination."  <u>Green v. Baltimore and Ohio R.R. Co.</u>, 337 F.2d 673, 676 (6th Cir. 1964) (citations omitted).  For these reasons a prior inconsistent statement is permitted for impeachment purposes even if it incriminates the defendant. <u>United States v. Bailey</u>, 831 F.2d 297, 1987 WL 44974 (6th Cir. (Ohio)) (unreported).

44

Rule 613(b) of the Federal Rules of Evidence allows the use of extrinsic evidence for impeachment purposes only if the witness is given an opportunity to explain or deny the statement and the opposing party is allowed to examine the statement. However, extrinsic evidence is unnecessary if the witness admits to the prior inconsistent statement.  <u>Rush</u>, 399 F.3d at 723.


Respectfully Submitted,

Gregory A. White
United States Attorney


<u>/s/Phillip J. Tripi</u>
By: Phillip J. Tripi
Assistant U.S. Attorney
400 U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113
Reg. No. 0017767
(216)622-3769/522-8355 FAX
Phillip.Tripi@usdoj.gov

45

<u>Certificate of Service</u>

I certify that on the 21st day of August, 2007, a copy of the foregoing Government's Trial Brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

<u>/s/ Phillip J. Tripi</u>
Phillip J. Tripi
Assistant U.S. Attorney